## Eskew v. Friedberg & Company.

(Decided December 19, 1919.)

### Appeal from Jefferson Circuit Court (Common Pleas, First Division).

1. Judgment—Amount of Recovery.—A judgment entered upon a verdict which is substantially greater than the utmost amount proven by the evidence, can not be upheld.

2. Damages—Breach of Contract on Tobacco Purchase.—In an action for damages for breach of contract where the plaintiff charges that the defendant, as agent for plaintiff, had purchased a quantity of tobacco, which he withheld whereby the plaintiff lost profits on a resale, the contract alleged being that the plaintiff was to accept the tobacco at the cost price to the defendant plus a commission of $1.10 on the 100 pounds, it is necessary for the plaintiff, in order to sustain his cause of action, to show with some certainty the cost of the tobacco to the defendant, and where the only evidence in the record shows that the verdict is several thousand dollars too large, the judgment will be reversed.

BURNETT, BATSON & CAREY and ALNION W. YOUNGBLOOD for appellant.

A. J. CARROLL for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

On November 25, 1916, Eskew entered into a written contract with H. Friedberg & Company, of Owensboro, Kentucky, whereby Friedberg & Company agreed to take over all tobacco bought by Eskew in Spencer and Warrick counties, Indiana, for the season 1916-17, "paying

him seventy-five cents per 100 lbs. above the actual cost price.'' The written contract reads as follows:

"Louisville, Ky., Nov. 25, 1916.

"This contract, entered into by and betwen H. Friedberg & Company, of Owensboro, Ky., party of the first part, and William Eskew, of Booneville, Ind., party of the second part.

"To-wit: H. Friedberg & Company agree to take over all contracts for tobacco bought by William Eskew in Spencer and Warrick counties, Indiana, season 1916-17, paying seventy-five (75c.) cents per hundred above the actual contract price. William Eskew agrees to put tobacco on wagons at his factory in Booneville, in case he is unable to secure the Farmers Warehouse in Booneville; in case he does secure the Farmers Warehouse the tobacco is to be put f. o. b. cars Booneville, Ind.

"H. Friedberg & Company agrees that William Eskew shall continue buying tobacco in the country and not to exceed an average price of $7.00 per hundred pounds until further notice.

"H. Friedberg & Company agrees that William Eskew shall pay for tobacco to the growers with drafts furnished by them.

"William Eskew agrees to furnish H. Friedberg & Company with a copy of all contracts made by him with the growers or shall hereafter make.

"(Signed) H. FRIEDBERG & COMPANY,
"By H. FRIEDBERG.
"WILLIAM ESKEW.''

Friedberg & Company was a partnership composed of H. Friedberg, Labin Phelps and J. C. Bright, engaged in buying, handling and selling tobacco. Eskew was an experienced tobacco man and an expert in buying tobacco from producers. The seventy-five cents mentioned in the written contract as going to Eskew was to be his commision for buying. Although Eskew had contracted for considerable tobacco before the making of this contract, he immediately, upon entering into the written contract, began to make contracts for the purchase of other tobacco and to pay for tobacco already contracted for by him, with drafts drawn on Friedberg & Company. Very soon the price of tobacco began to rise, and it was found necessary to pay more than seven cents per pound as stipulated in the written contract, and Fried-

berg & Company agreed for Eskew to pay either 7½c
or 8c per pound for tobacco on an average, but this price
was soon found to be insufficient to induce the farmers
to turn in their crops, and Eskew, in order to obtain the
tobacco, was allowed to pay even more, but just how much
more is involved in doubt. At any rate, on January 3rd
the parties to the written contract entered into a verbal
agreement whereby, as Friedberg & Company contend,
they were to have all the tobacco purchased by Eskew
in the counties named during the entire season, paying
him cost and $1.10 commission, and Friedberg & Com-
pany were to bear the expenses of insurance, storage,
etc. Eskew contends that he made no such verbal agree-
ment, but says he did agree to continue to buy tobacco
for Friedberg & Company but reserved the right to pur-
chase tobacco on his own account as and when he could
not buy tobacco at the price fixed by Friedberg & Com-
pany. He says that in buying tobacco he found it nec-
essary to pay more than eight cents, which Friedberg
& Company fixed as the limit, and that such tobacco
was purchased on his own account and for his own use
and benefit and not for Friedberg & Company. The
company, however, asserts that it would not have em-
ployed Eskew to buy tobacco for it and allowed him the
privilege to buy for his own account at the same time,
even at a higher price than the limit fixed by it. At any
rate, Eskew bought about 500,000 lbs. of tobacco during
the season, of which he delivered to Friedberg & Com-
pany 257,658 lbs., as claimed by them, the balance he
sold upon his own account at a profit greater than his
commission. Eskew contends that he delivered to Fried-
berg & Company 276,172 lbs., or at least all of the to-
bacco which was sold to him at that weight, but that
from the time he purchased it in the early part of the
season, it shrunk and became lighter as is the nature of
tobacco, until it weighed less than at the time he pur-
chased and received it, and that he delivered every
pound of the identical tobacco of which plaintiffs com-
plain in this first count. Friedbery & Company contend
that they had all of the tobacco sold to a named concern
at the price of $10.84 per 100 lbs., which they insist would
have netted them a handsome profit. After the season
closed and a settlement had been made between Fried-
berg & Company and Eskew, this suit was instituted by
the Company March 19, 1917, to recover of Eskew on

three items: (1) The failure of Eskew to deliver 18,514 pounds of tobacco purchased by him for the company at a cost of $1,616.52, and paid for with its funds, and which the company claims to have resold for a gross sum of $2,036.54, or a profit of $420.02, and which tobacco Eskew claims to have delivered to the company; (2) the failure of Eskew to deliver to the company 226,300 lbs. of tobacco which he purchased during the season with his own money but at a time when the company contends he was their agent and purchasing exclusively for them, whereby the company lost $7,513.16 in profits from a resale which they had effected. (3) Eskew substituted 38,000.00 lbs. of lugs, an inferior grade of tobacco for a corresponding amount of leaf tobacco whereby the company lost the sum of $1,127.78. Their first contention, however, is that Eskew purchased about 276,172 lbs. of tobacco for them and paid for the same with drafts on the company, and of which amount Eskew only delivered to them 257,658 lbs., thus withholding 18,514 lbs. which he should have delivered. Eskew answers this contention by saying that he did purchase the 276,172 lbs. for which Friedberg & Company furnished the money to pay, and that he delivered every pound of this to the company and that the 18,514 lbs. discrepancy, if it existed, was the result of shrinkage. That is to say, the tobacco when he purchased it for Friedberg & Company and weighed it, weighed 276.172 lbs., but on account of drying out, it weighed only 257,658 lbs. when it was received by the company at Louisville, but that the company was to bear all shrinkage, and therefore, he says he is not responsible for the 18,514 lbs. discrepancy. The company admits that it was to bear the shrinkage, but it says that the shrinkage in any event would not have amounted to 18,514 lbs.; that a shrinkage of tobacco from that district would have amounted to only about one pound per hundred upon such a purchase. Proof was introduced upon this question, and one expert, claiming to have traded in tobacco in this district for a number of years, and to have kept close account upon the shrinkage, stated that the shrinkage for that season amounted to only .0195%.

A trial was had before a jury and a verdict returned in favor of Friedberg & Company for $1,700.00 on the first item last discussed, and $6,000.00 upon the second item, which is the failure of Eskew to deliver to Fried-

berg & Company 226,300 lbs. of tobacco which they claim he purchased under his contract with them and which he refused to deliver, but sold on his own acount, the total verdict being $7,700.00 in favor of Friedberg & Company.

There are no difficult questions of law involved in this case, but there are numerous questions of fact, many of them involved in great doubt. The evidence for the company does not show with clearness exactly what the tobacco cost Eskew at Booneville, and as the company had agreed to pay him cost plus a commission, it is necessary to know the cost before an intelligent conclusion can be reached. Taking all of the evidence for the company and disregarding wholly the evidence for Eskew, we are unable to figure plaintiff's loss at any sum approximating the verdict, $7,700.00. Indeed, on the first item, failure of Eskew to deliver 18,514 pounds of tobacco paid for by drafts on the company, the utmost sum from the evidence appears to be about $1,400.00, while on the second item, where the verdict of $6,000.00 was returned, we figure the company was not entitled to recover more than about $2,200. If we accept the evidence of Eskew and his witnesses the tobacco cost Eskew in Booneville a little more than $9.00 per 100 lbs. on an average. To this must be added $1.10 commission on the 100 lbs., which would make it cost a little more than $10.10 per 100 pounds to Friedberg & Company. If they had the tobacco sold at $10.84 per 100 pounds, as appears from the evidence, then their loss was about 74c on the 100 pounds, and on 226,000 pounds their loss would have been $1,672.40, and no more, assuming the cost figures to be correct. Friedberg, Phelps, Bright and their witnesses are very indefinite on the subject of the cost of this tobacco. In all, the testimony for the plaintiff is entirely too indefinite and uncertain to sustain a verdict of $6,000.00 on the second item, or $1,700.00 on the first item.

The instructions are complained of and are subject to some criticism, being much longer than were necessary, but upon the whole seem fairly to present the question of fact to the jury.

Upon another trial, after the introduction of such competent evidence as the parties may wish to offer on the subject of the verbal contract made January 3, 1917, the plaintiff should show with some certainty the actual cost of the tobacco to Eskew in Booneville and the

amount of insurance, storage and other expenses which the company agreed to bear. Of course, Eskew may show this also, and from this evidence the jury will determine (1) whether there was such a verbal contract and its contents, and if it should decide that the verbal agreement bound Eskew to purchase tobacco only for the company and not on his own account; (2) it will then be the duty of the jury to find the cost of the tobacco to Eskew in Booneville, together with such other expense as the company was to stand, and to this add the commission, $1.10 on the 100 lbs., which Eskew was to receive, and take this sum from the proven price at which the company was selling the tobacco, and the difference will be the measure of damages to which the plaintiff is entitled. In the event the jury should conclude from the evidence, as contended by Eskew, that he was to buy only such tobacco for the company as he could obtain at the price fixed by the company, and that he had the right to purchase tobacco on his own account at a higher price and that he did so purchase all, or some material part of the tobacco which he resold, then the company is not entitled to recover anything of Eskew on this item to that extent; nor is it entitled to recover of him on item 1, if the jury should believe from the evidence that Eskew delivered to the company all of the tobacco which he purchased on its account and for which it paid and which it now claims is short 18,514 lbs., if the shortage is the result of shrinkage or other natural loss and not the result of Eskew's failure to deliver some part of the tobacco for which the company paid.

This case comes within the rule several times adhered to by this court that a recovery in damages cannot be sustained if accepting the evidence of the plaintiff upon every point, the amount proven is materially less than the verdict returned. Louisville Railway Company v. Schwemmer, 181 Ky. 641.

As the amount of the verdict in this case is greatly in excess of the highest sum proven, the judgment entered thereon must be reversed for a new trial consistent with this opinion.